```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

SHAWN M. CAMPBELL,

                Petitioner,

    -vs-

SUPERINTENDENT JOHN LEMPKE,

                Respondent.

**No. 1:14-CV-06551 (MAT)**
**DECISION AND ORDER**

_____

## I. Introduction

Proceeding *pro se*, Shawn M. Campbell ("petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being detained in respondent's custody in violation of his federal constitutional rights. Petitioner is incarcerated pursuant to a judgment entered on March 24, 2006, in Steuben County Court (Latham, J.), following his plea of guilty to two counts of murder in the second degree (N.Y. Penal Law §§ 125.25(01), 125.25(03)), two counts of burglary in the first degree (N.Y. Penal Law §§ 140.30(02), 140.30(03)), and two counts of grand larceny in the fourth degree (N.Y. Penal Law §§ 155.30(01), 155.30(07)).

## II. Factual Background and Procedural History

In a November 1, 2004 indictment, petitioner was charged as described above. The allegations of the indictment stemmed from an incident in which petitioner broke into the home of Rhonda and Rawlin Bilby, with the intent to commit a burglary therein. While in the house, petitioner, who believed the Bilbys were at work and would not be home, unexpectedly encountered Rhonda Bilby.

Petitioner struck Ms. Bilby in the head with a socket wrench, killing her. Petitioner fled the scene with stolen property and discarded the murder weapon. Ultimately, petitioner confessed the crime to police and told them where to find the murder weapon. Stolen property from the Bilby residence was found in petitioner's possession.

On October 17, 2005, a jury trial commenced before Steuben County Court Judge Joseph W. Latham. Petitioner was represented by William Kelley, Esq., of the Steuben County Public Defender's Office. Prior to the close of the People's case, petitioner agreed to plead guilty to the indictment and accept a maximum sentence of 25 years to life in prison, with sentences on all counts to be served concurrently. The plea agreement covered uncharged acts committed in Steuben County and a pending bribery charge in Bath Town Court, and petitioner agreed to waive appeal.

By *pro se* motion dated November 15, 2005, which was later renewed by appointed counsel (James Ferratella, Esq.) on March 17, 2006, petitioner moved to withdraw his guilty plea, claiming that his trial counsel, Mr. Kelley, had coerced him into accepting the agreement. County Court denied that motion. On March 24, 2006, petitioner was sentenced, as a second felony offender, to concurrent indeterminate terms of 25 years to life on each of the murder counts, determinate sentences of 25 years with five years post-release supervision on each of the burglary counts, and

indeterminate terms of two to four years on each of the grand larceny counts.

Petitioner filed a counseled brief on direct appeal with the New York State Supreme Court, Appellate Division, Fourth Department, in which he argued various grounds centering on his challenge to the plea. The Fourth Department unanimously affirmed the judgment of conviction, finding that while petitioner's waiver of appeal was invalid, his remaining claims failed on the merits. See People v. Campbell, 62 A.D.3d 1265, 1266 (4th Dep't 2009), lv denied, 13 N.Y.3d 795. The New York State Court of Appeals denied leave to appeal. Id.

On November 27, 2006, petitioner filed a *pro se* motion pursuant to New York Criminal Procedure Law ("CPL") § 440.10, arguing ineffective assistance of counsel, alleging for the first time that trial counsel, Mr. Kelley, had withheld exculpatory information by failing to inform petitioner of letters from a Wende Correctional Facility inmate, Loral R. Huffman, and by failing to investigate Huffman's allegations. Petitioner argued that he would not have pled guilty if he had known about the allegations contained within Huffman's letters.

Petitioner attached various documents to his 440 motion, including correspondence between Huffman and the Steuben County District Attorney, John Tunney. Beginning with a letter dated twelve days prior to the Rhonda Bilby murder, Huffman alleged that he had knowledge of a murder plot to occur in Steuben County and

3

stated that his "sole requirement [was] that [DA Tunney] not contact [him] other than via a letter and [Huffman would] respond via a letter." T. 271.[1] DA Tunney responded to this letter and requested more information. In a follow-up "affidavit" dated eight days prior to the murder, Huffman requested appointment of counsel. Next, in a letter dated the day after the murder, Huffman again requested appointed counsel "to assist [him] to stop (P) (BFDF) in getting (c) to Kill (Roda Biby) in a deal with (R) to rob + make it look like a robbery." T. 274. Huffman sent three more letters, culminating in a statement, in a letter dated approximately a week after the murder, that he had "learned . . . that [he] failed [in] his attempt to stop the murder for hire plot." T. 279.

County Court held petitioner's 440 motion in abeyance, and appointed petitioner new counsel, Joe Valley, Esq., to represent him on the motion. On April 1, 2008, Mr. Valley filed a superseding 440 motion, asserting that both Mr. Kelley and Mr. Ferratella had been ineffective. This motion again revolved around the Huffman letters, and petitioner claimed that he would not have pled guilty had he been aware of them. On June 27, 2008, Judge Latham denied the motion without a hearing. After granting leave to appeal, the Fourth Department reserved decision and remitted the case to County Court for an evidentiary hearing on petitioner's 440 motion, directing that the hearing be conducted "to determine what

---

[1] References to "T." are to the state court transcript filed with the court. (Doc. 9).

4

[petitioner's] trial counsel knew about the alleged potentially exculpatory evidence and whether he related that information to [petitioner]." People v. Campbell, 81 A.D.3d 1251, 1252 (4th Dep't 2011).

Prior to the hearing on the 440 motion, petitioner moved for Judge Latham's recusal, arguing that the court had prejudged the case with its prior decision denying the 440 motion. The court denied the recusal motion.

After a full evidentiary hearing, at which petitioner, Kelley, and Assistant District Attorney Brooks Baker (who presented the People's case at petitioner's trial) testified, County Court denied the 440 motion. In the decision dated January 6, 2012, Judge Latham found both Kelley's and Baker's testimony to be credible. Specifically, Judge Latham found that the testimony confirmed that Kelley had been advised by the prosecution of the existence of the Huffman letters, and had in a timely fashion shared the existence and significance of the letters with petitioner. The Court also found that evidence at the hearing established that the "Huffman source had been investigated by law enforcement" and found to be unreliable, and that it was "devoid of concrete information helpful to either prosecution or defense." T. 1396. The court rejected petitioner's claims of ineffective assistance against both Kelley and Ferratella.

On May 3, 2013, the Fourth Department unanimously affirmed the denial of the 440 motion and the judgment of conviction. See People

5

v. Campbell, 106 A.D.3d 1507 (4th Dep't 2013), lv denied 21 N.Y.3d 1002. In so doing, the Fourth Department specifically rejected petitioner's ineffective assistance claims. Id. at 1507-08. The Court found that County Court's credibility findings were "supported by the record and [] entitled to deference" (id. at 1508), noting that ADA Baker testified that the Huffman letters were discussed in a plea conference between him, Kelley, and petitioner, and that County Court therefore declined to credit petitioner's testimony that he was unaware of the letters until after his sentencing. The Fourth Department also found that County Court "did not abuse its discretion in refusing to recuse itself from conducting the hearing on remittal," as the "determination that it could be impartial was solely a matter of discretion, and there [was] no basis on this record to determine that the court abused its discretion." Id. On June 25, 2013, the Court of Appeals denied leave to appeal. People v. Campbell, 21 N.Y.3d 1002 (2013).

On July 19, 2014, petitioner filed a *pro se* coram nobis motion, arguing that appellate counsel on direct appeal was ineffective. The Appellate Division summarily denied that motion. People v. Campbell, 120 A.D.3d 1610 (4th Dep't 2014).

This habeas petition followed, in which petitioner asserts the following grounds for relief: (1) ineffective assistance of trial counsel due to trial counsel's alleged failure to disclose and failure to investigate the Huffman letters; and (2) violation of

6

due process as a result of County Court Judge Latham's refusal to recuse himself prior to the evidentiary hearing on the 440 motion.

Respondent answered the petition, arguing primarily that the petition is untimely, but also asserting that petitioner's claims fail on the merits. For the reasons discussed below, the Court agrees with respondent that the petition is untimely, and therefore will not address the merits.

### III. Timeliness

AEDPA requires that a federal habeas corpus petition be filed within one year of the date on which the petitioner's state court conviction becomes final. 28 U.S.C. § 2241(d)(1). A habeas petitioner's conviction generally becomes final for AEDPA purposes upon, "either the completion of certiorari proceedings in the United States Supreme Court, or—if the prisoner elects not to file a petition for certiorari—the time to seek direct review via certiorari has expired." Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001). In this case, petitioner's state court conviction became final on December 9, 2009, 90 days after the New York Court of Appeals denied his leave application on direct appeal. See Campbell, 13 N.Y.3d 795 (issued Sept. 10, 2009).

The limitations period under AEDPA was tolled, however, during the pendency of petitioner's overlapping CPL § 440.10 motions. All three of these motions – dated April 1, 2008, August 3, 2008, and November 3, 2009 – were filed before petitioner's conviction became final. The limitations period in this case thus began to run upon

completion of petitioner's 440 motions. See Carey v. Saffold, 536 U.S. 214, 219-20 (2002) ("[A]n application is pending [for AEDPA tolling purposes] as long as the ordinary state collateral review process is 'in continuance' — i.e., 'until the completion of' that process."). The Court of Appeals denied leave to appeal on the longest-running of petitioner's 440 motions on June 25, 2013. See Campbell, 21 N.Y.3d 1002 (2013).

Petitioner claims that the limitations period was then tolled for an additional 90 days, i.e., his time to petition for certiorari in the United States Supreme Court. Doc. 1 at 9-10. As respondent points out, however, the Supreme Court has expressly held that the limitations period runs for one year following the last state court action on the case, and is not tolled for an additional time period during which the petitioner could have sought certiorari in the Supreme Court. See Lawrence v. Florida, 549 U.S. 327, 332-33 (2007) ("By contrast [to the general limitations period found in § 2244(d)(1)], § 2244(d)(2) [which addresses tolling] refers exclusively to 'State post-conviction or other collateral review,' language not easily interpreted to include participation by a federal court.'"). Petitioner's limitations period thus began to run when the New York Court of Appeals denied leave on June 25, 2013, and the time period expired one year later, on June 25, 2014.

Petitioner filed his petition with this Court 89 days after that date, on September 22, 2014. He has presented no reason for

this delay and thus is not entitled to equitable tolling. See Washington v. Taylor, 2013 WL 2147415, *3 (W.D.N.Y. May 15, 2013) ("To qualify for equitable tolling of the limitations period, a habeas petitioner 'bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented him from timely filing."); Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (finding no equitable tolling where petitioner filed his petition "only 87 days after the state denied collateral relief"). Therefore, this petition is untimely.[2]

## CONCLUSION

For the foregoing reasons, the petition (Doc. 1) is dismissed as untimely. A certificate of appealability shall not issue because petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000). The Clerk of the Court is requested to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated: October 15, 2015
Rochester, New York.

---

[2] The Court notes that petitioner filed his *pro se* coram nobis motion on July 19, 2014. This filing came after the limitations period had expired on June 25, 2014, and therefore had no effect on tolling. See Smith, 208 F.3d at 17 (2d Cir. 2000).